Elmer **RINDERKNECHT**, Plaintiff/Respondent,

v.

Joseph P. **CAULFIELD**, Defendant/Appellant.

No. 50786.

Missouri Court of Appeals, Eastern District, Division Nine.

July 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 10, 1986.

Application to Transfer Denied Oct. 14, 1986.

Norton Y. Beilenson, Ralph M. Lake, St. Louis, for appellant, Caulfield.

Gerard F. Hempstead, Stephen B. Clark, St. Louis, for respondent, Rinderknecht.

CRANDALL, Presiding Judge.

Defendant, Joseph Caulfield, appeals from the judgment, in a court-tried case, entered in favor of plaintiff, Elmer Rinderknecht, on plaintiff's claim for commissions due pursuant to a business agreement and on defendant's counterclaim for expenses incurred in running the business. We affirm.

The standard of appellate review is guided by the oft-cited *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony. *Fountain v. Schlanker*, 651 S.W.2d 594, 596 (Mo.App.1983). The judgment is to be affirmed under any reasonable theory supported by the evidence. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). Further, the appellate court must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. *Id.* Deference is accorded the trial judge even if there is evidence which might support a different conclusion. *Id.* Within this narrow scope of review, we now review the evidence.

Plaintiff and defendant were licensed public adjusters. On April 12, 1978, they signed an agreement to conduct a business in which they would represent policy holders in their claims against insurance companies for damage and loss to property. The written agreement provided the following:

It is hereby agreed [sic] by and between Elmer Rinderknecht, and Joseph P. Caulfield, that all commissions received by Joseph P. Caulfield, Public Adjuster, will be divided by Elmer Rinderknecht and Joseph P. Caulfield, on a 50%,

50% basis, after all other commissions and expenses have been deducted.

This agreement may be terminated by mutual consent, or by 14 days written notice by either party.

This agreement will commence on April 10, 1978, and remain in affect [sic] in perpetuity, or until canceled [sic] or terminated by either party, or their heirs or assigns.

In the event of termination, all commissions due, and all equipment obtained after April 10, 1978, will be divided equally between the two parties, however Joseph P. Caulfield, shall retain the exclusive rights to the name Joseph P. Caulfield, Public Adjuster.

Plaintiff testified that, shortly after they began working together, he and defendant agreed orally that a fixed 10 percent would be deducted from plaintiff's commissions[1] to cover overhead costs and that, in turn, defendant would keep all of the furniture and equipment. Throughout the remainder of 1978, 1979, and part of 1980, the amount of every commission check received by plaintiff was calculated in conformity with this oral agreement. Defendant acknowledged that, at all times during his business association with plaintiff, the books and records were under his exclusive control but were available for plaintiff's inspection at any time. In the fall of 1980, defendant began withholding commissions from plaintiff. Defendant testified that this was necessary to recoup plaintiff's portion of the overhead expenses which was not covered by the 10 percent deducted from plaintiff's commissions. On March 17, 1981, plaintiff terminated his business arrangement with defendant.

Plaintiff filed this action against defendant. In his first petition, he sought return of the commissions which defendant had allegedly misappropriated as well as an accounting of all commissions and equipment obtained after April 10, 1978. Defendant counterclaimed, seeking reimbursement of

---

**1.** Any fees paid to outside solicitors for procuring business were deducted from the commissions before applying the ten percent factor.

that portion of plaintiff's half of the overhead which defendant had paid throughout their business association. Plaintiff's second amended petition charged that the parties had modified the written agreement by determining to deduct a fixed 10 percent for expenses from the amount of their commissions. The trial court made findings of fact and conclusions of law. It found that "the parties by oral agreement, subsequent conduct, and actual practice modified and changed" the written agreement. Four stipulations with regard to damages were submitted to the trial court. Pursuant to Stipulation 1,[2] the trial court awarded plaintiff $46,484.34 for commissions due him.

■ In his first point, defendant alleges that the trial court erred in finding that consideration existed to support a modification of the terms of the written agreement. Defendant's second point challenges the trial court's finding that the parties intended to change their written agreement. We consider these two allegations of error together. The fundamental question underlying both these contentions is whether there was substantial evidence adduced from which the trier of fact could decide that the agreement between the parties had been modified.

Plaintiff testified that he and defendant had altered the terms of the written agreement by arriving at a fixed 10 percent deduction for overhead after the outside commissions for solicitors were deducted; that, in return for this alteration in their business arrangement, plaintiff had relinquished his 50 percent interest in the office equipment; and that, throughout their business association, his commissions had been calculated in accordance with the oral modification. Defendant's testimony contradicted that of plaintiff. Faced with this conflict in testimony, it was the prerogative of the trial court to believe plaintiff and to accept his testimony as true. There was therefore substantial evidence to support the court's finding that a modification of the written agreement had occurred. Defendant's first two points are denied.

Defendant, in his third point, assigns error to the trial court's admission of Exhibit G and its refusal to admit certain other exhibits, all of which depicted the finances of the business. Defendant asserts that the admission of Exhibit G was prejudicial because that exhibit inaccurately reflected the amount of commissions due plaintiff.

■ The appellate court will only in rare cases find cause for reversal in the admission of improper evidence as long as substantial competent evidence remains to support the judgment. *Steinbruegge v. Steinbruegge,* 670 S.W.2d 583, 584 (Mo.App.1984). Assuming *arguendo* that the admission of Exhibit G was error, substantial competent evidence existed to support the amount of the judgment rendered by the trial court, particularly in light of the fact that the amount of the judgment comported with the figure in Stipulation 1. Defendant's third point is denied.

■ In his fourth point, defendant asserts that, as a result of the trial court's finding that there was a modification to the written agreement, the judgment was unconscionable for the reason that the allocation of profits and expenses between plaintiff and defendant was grossly inequitable. We note that the record before us indicates that this contention was not advanced to the trial court. "[A] party should not be entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." *In re Marriage of Ryterski,* 655 S.W.2d 102, 103 (Mo.App.1983). Defendant has not preserved this claim of error for our review.

---

2. Stipulation 1 provided:
   IF COURT SHOULD FIND THAT PLAINTIFF'S METHOD OF CALCULATION IS CORRECT, i.e.,
   1. Gross receipts include all fees on files which were signed up between April 10, 1978 and March 17, 1981, no matter when the fee was collected
   2. Less 10% of gross receipts for overhead
   3. Less solicitors commissions
   DEFENDANT OWES PLAINTIFF $46,484.34.

Even assuming that the trial court implicitly resolved the unconscionability issue when it adopted the formula in Stipulation 1 and entered judgment in favor of plaintiff, defendant's contention is without merit. The measure of damages was a question of fact for the trial court and there was substantial evidence to support the amount of the judgment. No error of law appears. Defendant's fourth point is denied.

Defendant's fifth point avers error in the trial court's finding that defendant's course of conduct throughout his business association with plaintiff estopped him from claiming his rights pursuant to the written agreement. The trial court relied heavily on the "subsequent conduct" and "actual practice" of the two parties to buttress its finding that there was an oral modification of the written agreement. In view of our holding on Defendant's points I and II that there was substantial evidence to support the trial court's finding that the written agreement had been modified, we need not address the estoppel issue. Defendant's fifth point is denied.

In his sixth point, defendant claims that the trial court erred in drawing a negative inference from defendant's failure to call as a witness his accountant, whom he had identified as an expert witness.

Whether or not the trial judge erred is academic in this court-tried case. Even if the adverse inference were not drawn, there was substantial evidence to support the judgment of the trial court. Defendant was not prejudiced by the negative inference. Defendant's final point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.