**Terrence M. MOORE, Plaintiff–Appellant,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Defendant–Respondent.**

**No. 17166.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 28, 1991.

William E. Hickle, Carnahan, Carnahan & Hickle, Rolla, for plaintiff-appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Sp. Asst. Atty. Gen., Jefferson City, for defendant-respondent.

PARRISH, Presiding Judge.

This is an appeal of the suspension of appellant's driving privileges. Appellant's driving privileges were suspended upon determination by the Department of Revenue (the Department) that he was arrested under circumstances that gave probable cause to believe that appellant was driving a motor vehicle at a time when he had "thirteen-hundredths of one percent or more by weight of alcohol in his blood." § 302.505.[1] Appellant requested administrative review of the Department's determination. § 302.530. Following a review hearing, a decision was rendered upholding the suspension of appellant's driving privileges. Appellant then requested a trial de novo. § 302.535. Trial was held in the Associate Circuit Judge Division of the Circuit Court of Phelps County. The trial court upheld the determination of the Department and ordered that appellant's driving privileges be suspended. This court affirms.

This case was tried by the court, sitting without a jury. § 302.535. As such, the parameters within which it is reviewed on appeal are as follows.

> In a court-tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In determining if there is substantial evidence, we defer to the ability of the trial court to ascertain the facts and to judge the credibility of witnesses. *Rinderknecht v. Caulfield,* 716 S.W.2d 405, 406 (Mo. App.1986). We view the evidence in the light most favorable to the judgment. *Id.* The trial court is accorded wide discretion even if there is evidence in the record which would support a different result. *Calvary Heights Baptist Temple v. Molasky,* 733 S.W.2d 774, 775 (Mo. App.1987).

*Thurmond v. Director of Revenue,* 759 S.W.2d 898, 899 (Mo.App.1988).

Appellant was driving an automobile that ran off a roadway and into a ditch. The accident occurred within the Rolla, Missouri, city limits. A city policeman, Kevin Johnson, arrived at the accident scene and was directed to appellant. Officer Johnson talked to appellant. It was obvious to Officer Johnson that appellant was injured. Appellant produced a driver's license and told the officer that he was driving home when he lost control of his automobile and ran into the ditch. Road conditions were hazardous due to weather conditions—"probably, three to four inches of very wet snow."

Officer Johnson noticed an odor of intoxicants about appellant. Appellant stated that he had consumed "approximately four beers that night." Appellant was transported by ambulance to a hospital. Officer Johnson requested that appellant submit to a blood test. Appellant agreed to the request. The officer directed Randall Tasker, a registered phlebotomist employed by the hospital where appellant had been taken, to draw blood for analysis to determine its alcohol content.

Mr. Tasker testified as to the procedure he followed in drawing blood from appellant. He cleansed the puncture site with a "Betadine prep" that he described as a nonalcoholic antiseptic. It is a prepackaged solution. The seal on the package

---

1. References to statutes are to RSMo 1986.

that Tasker used was unbroken prior to its use by him.

Tasker prepared a device known as a vacutainer for use in drawing blood. He described the procedure he followed:

The vacutainer is a reusable device that is—You take a vacutainer needle, you screw it on to [sic] the vacutainer, and then—Each tube has a vacuum in it; and when you put the tube through the vacutainer, the needle pierces the rubber stopper, and the blood is drawn from the vein into the tube by a vacuum.

Appellant raises one point on appeal. He contends that the trial court erred by admitting in evidence the results of his blood alcohol test. He contends that the test was not administered in accordance with § 577.-029 and, therefore, the trial court's judgment affirming the suspension of his driving privileges was not supported by "competent evidence." Appellant summarized his complaints as follows:

In the instant case, Mr. Tasker believed that the needle and vacuum tube were sterile solely because their packages said they were sterile. Obviously such a statement is hearsay and was objected to as such at trial. . . . Respondent simply failed to prove that the needle and vacuum container were sterile.

Similarly, Respondent failed to prove that a nonalcoholic antiseptic was used to cleanse Appellant's skin prior to venapuncture [sic]. Mr. Tasker stated that he used a solution contained in a small glass vial to cleanse the skin. He stated that the vial was labeled "Betadine" and that the package stated that the solution contained "10% iodine solution." His testimony that the vial contained Betadine solution was based solely on the fact that the vial was labeled "Betadine" and because the solution was brown. (Page references to trial transcript omitted.)

Section 577.029, in pertinent part, states:

A licensed physician, registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcohol content of the blood, unless such medical personnel, in his good faith medical judgment, believes such procedure would endanger the life or health of the person in custody. . . . *In withdrawing blood for the purpose of determining the alcohol content thereof, only a previously unused and sterile needle and sterile vessel shall be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices. A nonalcoholic antiseptic shall be used for cleansing the skin prior to venapuncture* [sic]. . . . (Emphasis added.)

Neither party has cited a Missouri case in which the evidentiary issues presented by this appeal have been determined. This court's independent research, likewise, failed to disclose any Missouri case that has addressed those issues. Other jurisdictions, however, have dealt with these questions or similar questions. Cases from other jurisdictions that this court finds persuasive hold, generally, that labels placed on pharmaceutical and hazardous substances suffice to establish "circumstantial probability of trustworthiness," and are admissible as evidence to prove the contents of the substances in the containers to which the labels are attached. *See State v. Mitchell,* 18 Ohio App.2d 1, 246 N.E.2d 586, 591 (1969). Otherwise, an array of witnesses would be required to establish qualitative analyses of substances as well as production control and packaging in order for the items to be admissible in evidence. At best, but for admitting labels as evidence of the identity and condition of items, gross inconvenience would occur. At worst, items requiring such testimony would, in all practicality, not be admissible because of the difficulty or impossibility of securing the presence of witnesses. *See also In Interest of T.D.,* 115 Ill.App.3d 872, 71 Ill.Dec. 20, 450 N.E.2d 455 (1983); *State v. Winquist,* 247 N.W.2d 256 (Iowa 1976); *State v. Rines,* 269 A.2d 9 (Me.1970).

In *State v. Mitchell, supra,* a registered pharmacist testified, over the hearsay objection by the defendant, that the contents of a bottle that contained a medicinal preparation included a certain narcotic ingredi-

ent. The knowledge upon which the pharmacist based his testimony was the printed label that was on the bottle. The Ohio court concluded that the pharmacist's testimony was not hearsay because he related his observation of the statement on the bottle's label; that the manufacturer's label on the bottle itself was real evidence of its contents because, under the circumstances, the label was accurate and trustworthy. The court, in *Mitchell*, referred to 5 *Wigmore, Evidence* (Chadbourn Rev. 1974), saying:

> ... In testing the reliability of this entirely different—non-people—evidence, Wigmore suggests what he talks about as "circumstantial probability of trustworthiness." The language used at page 204, Section 1422, is:
>
> " * * * under certain circumstances the probability of accuracy and trustworthiness of statement is practically sufficient, if not quite equivalent to that of statements tested in the conventional manner. * * * "

> And, as if to nullify an objection that there is no oath and possible punishment for perjury, he suggests that "where, even though a desire to state falsely may casually have subsisted, more powerful motives to accuracy overpower and supplant it." (Page 369, Section 1522.)

246 N.E.2d at 591.

The assessment of the Ohio court in *Mitchell* is consistent with the analysis by the Supreme Judicial Court of Maine in *State v. Rines, supra.* The facts in *Rines* are similar to those in the case now before this court in that the issue presented in *Rines* is whether a manufacturer's certificate on a sealed "blood alcohol kit" with respect to the kit's nature and quality was sufficiently trustworthy "to raise a presumption as to the truth of the facts asserted and would permit a jury to so find." 269 A.2d at 15. The kit's label or certificate disclosed that its contents included, among other things, "1 3200H VACU-TAINER Holder, disposable"; "1 5749 VACUTAINER Multiple Sample Needle, sterile and disposable"; and "1 Swab containing Benzalkonium Chloride Solution—

Concentration 1:750 Aqueous." 269 A.2d at 10–11.

The court, in *Rines*, acknowledged that "[i]t is a matter of judicial notice that the consumer public daily accepts as true and relies upon the assertions in labels and brands appearing on packages displayed at the supermarket." 269 A.2d at 14. The court further pointed to "the provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., (Drug Act)," stating:

> Section 331 not only prohibits the introduction into interstate commerce by the maker of any drug that is adulterated or misbranded, but the receipt thereof and delivery of the same for pay. It also prohibits the alteration of the labeling with respect to a drug held for sale after shipment in interstate commerce. Section 333 provides penalties.... This federal Act places an obligation on both the manufacturer who ships interstate and the purchaser for resale to truthfully "brand" and maintain quality (no adulteration) as represented.

269 A.2d at 15. The court concluded that the certificate of the manufacturer attached to the box containing the blood alcohol kit "has upon its face sufficient trustworthiness to raise a presumption as to the truth of the facts asserted and would permit a jury to so find," and "that the certificate is prima facie evidence that the swab and tubes contain in pure form what they purport to contain and in the amounts asserted." 269 A.2d at 15–16.

In *State v. Winquist, supra*, a blood sample had been taken, pursuant to an Iowa statute, and analyzed for alcohol content in conjunction with a criminal charge of operating a motor vehicle while under the influence of alcohol. The Iowa statute required that "[o]nly new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions shall be used for drawing blood." 247 N.W.2d at 259. The technician who obtained the blood sample from the defendant testified that he used a new, factory wrapped disposable syringe and needle that he got from the city laboratory.

The defendant argued that there was no showing that the apparatus had been kept under sanitary conditions. The Iowa court found that the state's evidence was sufficient proof that the syringe and needle were sanitary and sterile when used. *Id.*

An Illinois court addressed the issue of reliability of a manufacturer's label in *In Interest of T.D., supra.* There, in a juvenile proceeding, the issue was whether a juvenile had made unlawful use of an intoxicating compound. The intoxicating compound was glue. The arresting officer was permitted to read from the label on a tube of glue for purposes of establishing the nature of the compound. On appeal the defendant argued, "Since the witness had no personal knowledge as to the manufacture of the tube or its contents and since his reading from the label was done for the purpose of proving the identity of those contents, ... the trial court was required to exclude this evidence under the hearsay rule." 450 N.E.2d at 457. The Illinois court held:

> Although we do not believe the label was shown to be an exception to the hearsay rule as a business record or a public document, we believe it was still properly admissible. The label on the glue was sufficiently reliable and trustworthy on its face to be considered an exception to the hearsay rule.

450 N.E.2d at 458. In so holding, the court noted that the label was required to be on the product by both federal and Illinois law.

Missouri requires proof that the person drawing blood for purposes of determining its alcohol content used a sterile needle in performing that task. *State v. Setter*, 763 S.W.2d 228 (Mo.App.1988). Missouri also requires proof that a nonalcoholic antiseptic was used to cleanse the skin prior to venipuncture. *State v. Hanners*, 774 S.W.2d 568 (Mo.App.1989). Missouri has recognized, however, that circumstances may exist in some types of cases that warrant recognition of a special exception to the traditional hearsay evidence rule. See for example, *In Re Marriage of P.K.A.*, 725 S.W.2d 78, 80–82 (Mo.App.1987).

Here the phlebotomist, certified in his professional specialty by the American Society of Clinical Pathologists, used a prepackaged, unopened needle and vacuum tube to take the blood sample. The needle and vacuum tube were labeled as "sterile." He used the same type of equipment that he regularly used and relied upon as being sterile in his day-to-day duties at the hospital where he was employed—the hospital in which he took the blood sample that is the subject of this case. The procedures he followed in securing and using the equipment did not deviate from the professional training he had received or from the procedures that he followed in his day-to-day experience. The needle was packaged and labeled as sterile. The phlebotomist relied on the labeling.

The same is true as to the Betadine solution that was used to cleanse the skin prior to venipuncture. The solution was labeled as 10% iodine and 90% water—a nonalcoholic solution. It was routinely used in the hospital environment in which the phlebotomist worked and, in using the compound, the accuracy of the label was relied upon for purposes of identifying its contents.

This court holds that the facts presented in this case are sufficient to establish a circumstantial probability of trustworthiness that the needle and vessel used to withdraw the blood were sterile in accordance with the labeling on their respective packaging and that the facts presented were sufficient to establish a circumstantial probability that the antiseptic used to cleanse the skin prior to venipuncture was Betadine—a solution of 10% iodine and 90% water, as labeled; a nonalcoholic antiseptic. The trial court did not err in overruling appellant's hearsay objections and in admitting into evidence the statements on the labels and packaging as to the content and condition of the items in question. The facts of this case support the admission of that evidence in that the statements on the labels and packaging in question are sufficiently reliable and trustworthy on their face to be considered an exception to the hearsay rule. The trial court's determination was supported by substantial evidence;

it was consistent with the weight of the evidence; it neither erroneously declared nor applied the law. The order of the trial court suspending appellant's driving privileges is affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.