STATE of Missouri, Appellant,

v.

Danny Ray PARKER, Respondent.

No. 17714.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 1991.

William Camm Seay, Salem, for appellant.

---

J. Marty Robinson, Rolla, for respondent.

MONTGOMERY, Judge.

Danny Ray Parker (hereafter called defendant) was charged by information with the Class C felony of vehicular manslaughter in violation of § 565.024, RSMo 1986. The information alleges that defendant, on May 27, 1989, in Dent County, Missouri, while under the influence of alcohol caused the death of Audrey Lucille Mooney, by striking her vehicle with criminal negligence in that defendant was on the wrong side of the road.

Defendant filed a motion to suppress physical evidence of the blood test taken from him after the incident. The suppression hearing was conducted August 6, 1991. The trial court ruled that the blood test was inadmissible for lack of evidence that the vacutube (vessel) was sterile. Consequently, the requirements of § 577.-029, RSMo 1986,[1] were not met. From this ruling the state appeals. See § 547.200.

Only one point is presented for determination. The state contends the trial court erred in suppression of the blood test because the state adduced facts sufficient to establish a circumstantial probability of trustworthiness that the needle and vacutube (vessel) used to draw the blood were sterile and unused, and the state established a circumstantial probability that the antiseptic used to cleanse the skin prior to venipuncture was nonalcoholic.

Section 577.029, in pertinent part, states:

A licensed physician, registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcoholic content of the blood, unless such medical personnel, in his good faith medical judgment, believes such procedure would endanger the life or health of the person in custody.... *In withdrawing blood for the purpose of determining the alcohol content thereof, only a previously unused and sterile needle and sterile vessel shall be utilized and the withdrawal* *shall otherwise be in strict accord with accepted medical practices. A nonalcoholic antiseptic shall be used for cleansing the skin prior to venapuncture [sic]....* (Emphasis added.)

The state cites only one Missouri case, our decision in *Moore v. Director of Revenue,* 811 S.W.2d 848 (Mo.App.1991). There a motorist appealed from an order which suspended his driving privileges. We held that the results of a motorist's blood alcohol test were property admitted, despite the motorist's contention that the phlebotomist who testified as to the procedure he followed in drawing blood did not prove that the needle and vacuum container were sterile and that antiseptic used to cleanse the skin prior to venipuncture was nonalcoholic. The statute before us was § 577.029 as in the instant case.

In *Moore,* the blood was drawn from the motorist by a registered phlebotomist employed by the hospital where the motorist was taken. He testified he cleansed the puncture site with "Betadine prep," which was a nonalcoholic antiseptic. He used a prepackaged, unopened needle and vacuum tube to take the blood sample. The needle and vacuum tube were labeled as "sterile."

We stated:

Neither party has cited a Missouri case in which the evidentiary issues presented by this appeal have been determined. This court's independent research, likewise, failed to disclose any Missouri case that has addressed those issues. Other jurisdictions, however, have dealt with these questions or similar questions. Cases from other jurisdictions that this court finds persuasive hold, generally, that labels placed on pharmaceutical and hazardous substances suffice to establish 'circumstantial probability of trustworthiness,' and are admissible as evidence to prove the contents of the substances in the containers to which the labels are attached. Otherwise, an array of witnesses would be required to establish qualitative analyses of substances as well as production control and packaging

---

1. All statutory references are RSMo 1986, unless otherwise indicated.

in order for the items to be admissible in evidence. At best, but for admitting labels as evidence of the identity and condition of items, gross inconvenience would occur. At worst, items requiring such testimony would, in all practicality, not be admissible because of the difficulty or impossibility of securing the presence of witnesses. [Citations omitted.]

*Id.* at 850.

We held:

This court holds that the facts presented in this case are sufficient to establish a circumstantial probability of trustworthiness that the needle and vessel used to withdraw the blood were sterile in accordance with the labeling on their respective packaging and that the facts presented were sufficient to establish a circumstantial probability that the antiseptic used to cleanse the skin prior to venipuncture was Betadine—a solution of 10% iodine and 90% water, as labeled; a nonalcoholic antiseptic. The trial court did not err in overruling appellant's hearsay objections and in admitting into evidence the statements on the labels and packaging as to the content and condition of the items in question. The facts of this case support the admission of that evidence in that the statements on the labels and packaging in question are sufficiently reliable and trustworthy on their face to be considered an exception to the hearsay rule.

*Moore,* 811 S.W.2d at 852.

Clearly, our decision was based on the statements on the label and packaging as to the content and condition of the needle and vacuum tube which were labeled as "sterile."

In the instant case, in contrast, Trooper Volkmer testified he supplied the hospital technician a vacuum tube to take the blood sample. He stated the vacuum tube was taken from the Troop I Headquarters' stock and kept by him in his briefcase in the back seat of his patrol car. He obtained the vacuum tube from a secured room in the basement of Troop I Headquarters. The stock of vacuum tubes comes direct from the factory according to the trooper.

Terry Lee Keown is the laboratory manager at Salem Memorial Hospital where his duties are day-to-day operation of the laboratory. He was trained by the United States Navy at the Medical Laboratory Technician Specialist School in Fort Sam Houston, Texas. He stated he drew blood from defendant by following the standard operating procedure at Salem Memorial District Hospital. He swabbed the venipuncture site with Betadine scrub which is a nonalcoholic sterolin [sic]. He received the vacuum tube from Trooper Volkmer, which appeared to be in good condition, and there were no places on it which appeared to be cracked or open. He testified the needle came from the laboratory stock at the hospital, and it was contained within a plastic sheath that has a paper tape around it. If the seal is "busted" or if the needle is open in some manner, the paper sheath around the cap of the needle would be "busted." He confirmed the condition of the needle packaging he used was intact. He specifically stated that the container of the needle was only marked with the manufacturer's name. That name is not revealed to us by the record. Finally, he emphasized that there was nothing about the needle's appearance which indicated it had been tampered with or opened and was completely sealed when he received it.

From the stated testimony, we are asked to apply *Moore, supra.* No evidence indicates labeling on the needle or vacuum tube packaging was marked "sterile." In fact, the lab technician stated that only the manufacturer's name appeared on the container of the needle. The trooper testified the vacutube (vessel) came from headquarters' stock which was obtained "direct from the factory."

Our review here is to determine if the evidence supports the trial court's order of suppression. *State v. Lanear,* 805 S.W.2d 713, 715 (Mo.App.1991). The correctness of the trial court's decision is measured by whether the evidence is sufficient to sustain the findings. *State v. Cross,* 757 S.W.2d 613, 614 (Mo.App.1988). The

weight of the evidence and the credibility of witnesses are questions for the trial court's resolution. *State v. Trimble,* 654 S.W.2d 245, 254 (Mo.App.1983).

Section 577.029 requires that a previously unused and sterile needle and vessel shall be utilized in blood testing. The trial court specifically ruled that the blood test was inadmissible because there was no testimony that a sterile vacutube (vessel) was utilized in the withdrawal of blood from the defendant. The trial court correctly concluded that no evidence revealed that the vessel used was "sterile."

Our decision in *Moore, supra,* was specifically· based upon labels found on the needle and vacutube (vessel). Those labels were marked "sterile." We held that those facts were sufficient to establish a circumstantial probability of trustworthiness that the needle and vessel were sterile. Such facts are not present in this case.

In *State v. Hanners,* 774 S.W.2d 568 (Mo.App.1989), the court stated:

The requirements of the statute before us are unambiguous. The drawing of blood for this alcohol test must be done with a sterile needle. The blood must be placed in a sterile container and a non-alcoholic antiseptic must be used to clean the skin. These requirements are 'clear and [are] not difficult to meet.' *State v. Setter,* 763 S.W.2d 228, 231 (Mo.App. 1988). In the instant case, as in *Setter,* the prosecutor had the burden of proving that the blood was drawn in accordance with the statutory requirements.

*Id.* at 569.

The state did not meet the burden of proof necessary under § 577.029 simply because *no* evidence was presented showing the needle or blood container to be "sterile." Our opinion should not be interpreted to mean that the only way the state can prove sterility is by offering evidence that each individual package is marked "sterile." In addition to labeling, the state may prove sterility by any other reliable method of proof.

The order sustaining the motion to suppress is affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.