Michael **REYNOLDS**, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. WD 57398.

Missouri Court of Appeals, Western District.

June 20, 2000.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Michael D. Holzknecht, Kansas City, for respondent.

Before BRECKENRIDGE, C.J., LOWENSTEIN and ULRICH, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

The Director of Revenue appeals the judgment of the trial court reinstating Michael Reynolds's driving privileges. The Director challenges the trial court's decision that the Director failed to prove Mr. Reynolds had a blood alcohol concentration of at least .10% because the evidence offered by the Director was not sufficient to prove that the simulator solution used in the breath analyzers was from an approved supplier. Because this court finds that the Director offered sufficient evidence to prove that the simulator solution used was from an approved supplier, the trial court's judgment is reversed and the cause is remanded with directions to reinstate the Director's suspension of Mr. Reynolds's driving privileges.

### Factual and Procedural History

On May 8, 1997, Mr. Reynolds was arrested in Lafayette County for driving while intoxicated. Mr. Reynolds consented to a breath test, which was administered using a BAC Verifier breath analyzer. The test result showed a blood alcohol concentration of .304%. Mr. Reynolds requested a second test, which was administered on a DataMaster breath analyzer. The result from the second test showed a blood alcohol concentration of .28%. Upon receipt of a report of this information, the Director suspended Mr. Reynolds's driving privileges under § 302.505, RSMo Cum. Supp.1999,[1] for driving with a blood alcohol concentration of .10% or more. The decision was upheld after an administrative hearing, and Mr. Reynolds filed a petition for a trial de novo pursuant to § 302.535.

The trial de novo was held on April 30, 1999. Before the Director put on any evidence at the trial de novo, the trial court asked if there were any preliminary matters. Defense counsel told the court that he agreed to stipulate that the arrest-

ing officer had probable cause to arrest Mr. Reynolds for driving while intoxicated, but that he disputed the admissibility of the test results indicating that Mr. Reynolds's blood alcohol content (BAC) was .10% or more at the time of his arrest. Defense counsel stated, "We're – we are obviously agreeing that – that the test results exceeded the legal limit. But our problem is that we don't feel the Director can get there based upon the evidence and the record on the certificate of analysis of the testing solution." The trial court admitted the test results indicated that the manufacturer of the simulator solution in Lot Number 96004, used by Trooper Hughes to maintain the DataMaster, was "Rep Co Marketing, Inc." The officer testified that he used simulator solution he obtained from Highway Patrol Troop A's supply and that the solution came in a sealed box that included a certificate of analysis. The officer also testified that the label on the bottle of simulator solution he used to maintain the breath analyzer stated "RepCo." The certificate of analysis accompanying the sealed box of simulator solution was also included in Exhibit A. The certificate of analysis for Lot Number 96004 was on RepCo Marketing, Inc. letterhead and was signed by Cecil B. Garner, President, RepCo Marketing, Inc.

Mr. Reynolds did not offer any evidence, and the trial court took the case under advisement. On May 11, 1999, the trial court issued a judgment reinstating Mr. Reynolds's license. The judgment stated that the Director failed to carry his burden of proof and persuasion. Specifically, trial court found the Director failed to prove that the simulator solutions used in each of the two breath tests were from an approved supplier. The Director appeals.

### Standard of Review

After an adverse decision from the Department of Revenue, a driver may

1. All statutory references are to the 1999 Cumulative Supplement to the Revised Statutes of Missouri, unless otherwise indicated.

petition for a trial de novo in the circuit court. Section 302.535.1, RSMo Cum. Supp.1998; *Zwyers v. Director of Revenue,* 948 S.W.2d 473, 474 (Mo.App.1997). On appeal, this court reviews the circuit court's judgment and not the administrative order. *Id.* Review of the trial court's judgment after a trial de novo is governed by the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Kimber v. Director of Revenue,* 817 S.W.2d 627, 629 (Mo.App.1991). The decision of the trial court must be affirmed on appeal unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Id.* at 629–30. This court will accept as true "the evidence supporting the circuit court's judgment, as well as all reasonable inferences drawn from such evidence," and will disregard all contrary evidence and inferences. *Id.* at 630.

■ At a trial de novo, the Director has the burden of proving by a preponderance of the evidence a prima facie case for suspension of a driver's license. *Haas v. Director of Revenue,* 975 S.W.2d 483, 484 (Mo.App.1998). The Director satisfies this burden "by presenting evidence that: (1) the driver was arrested upon probable cause that he or she was driving in violation of an alcohol-related offense; and (2) the driver had been driving with a blood alcohol content of .10 percent or greater." *Id.* "When the Director makes a prima facie case, the burden then shifts to the driver to present evidence to rebut the prima facie case by a preponderance of the evidence." *Bramer v. Director of Revenue,* 982 S.W.2d 793, 794 (Mo.App.1998).

### The Director Made a Prima Facie Case for Suspension

■ Director's sole point on appeal is that the trial court erred in setting aside the suspension of Mr. Reynolds's driving privileges because the evidence offered at trial showed that Mr. Reynolds was arrested upon probable cause and had a blood

alcohol concentration of .10% or more. Specifically, the Director argues that the record shows that the breath analyzers were calibrated with simulator solution from an approved supplier.

The parties stipulated at trial that Mr. Reynolds was arrested upon probable cause to believe that he was driving while intoxicated, the first prong of the Director's prima facie case. The parties further stipulated that if the results of the breath analyzer were admissible, the results would show that Mr. Reynolds had a blood alcohol concentration of .10% or more. The issue at trial was whether the simulator solution used to verify and calibrate the breath analyzers was from an approved supplier so there was a sufficient foundation to admit the test results.

■ "To establish a foundation for admission of breathalyzer test results, the Director must demonstrate the test was performed: (1) by following the approved methods and techniques of the Department of Health, (2) by persons holding a valid permit and (3) on equipment and devices approved by the Department of Health." *Butts v. Director of Revenue,* 980 S.W.2d 187, 188 (Mo.App.1998). These foundational requirements are found in 19 C.S.R. 25–30 of the Code of State Regulations. The only requirement under the current regulations regarding the standard simulator solution that is used in verifying and calibrating the breath analyzer is that the solution be from an approved supplier. 19 C.S.R. 25–30.051.

RepCo is an approved supplier listed in 19 C.S.R. 25–30.051(3). The evidence at trial was sufficient to show that RepCo supplied the solution employed to verify and calibrate the two breath analyzers upon which the tests of Mr. Reynolds's blood alcohol level were performed. Officer Buckler testified that he ordered the simulator solution used to maintain the BAC Verifier from RepCo and that the return address on the box and the labels on the bottles of simulator solution he

received stated "RepCo Marketing." A certificate of analysis accompanied the shipment of simulator solution received by Officer Buckler. Trooper Hughes testified that a certificate of analysis also accompanied the sealed box of simulator solution that he received from Troop A's supply. At the top of both certificates of analysis, the name "RepCo Marketing Inc." was written out and the certificates were signed by "Cecil B. Garner, President, RepCo Marketing, Inc." The maintenance reports issued by Officer Buckler and Trooper Hughes indicated that the manufacturer of the simulator solution used was "RepCo Marketing, Inc.," and the lot numbers on the maintenance reports and the certificates of analysis matched. Further, Trooper Hughes testified that the label on the bottle of simulator solution he used on the DataMaster machine stated "RepCo."

Mr. Reynolds argues that the certificates of analysis do not expressly state that RepCo manufactured the simulator solution and the officers did not actually testify that the simulator solution came from RepCo. It is unnecessary for the certificates of analysis to use the exact language of the regulation, "so long as there is substantive compliance with the procedural requirements." *Meurer v. Director of Revenue*, 984 S.W.2d 873, 876–77 (Mo.App.1999). The certificates of analysis adequately convey that the manufacturer of the solution was RepCo and, along with the other evidence, are sufficient proof that RepCo manufactured the solution. *Schulte v. Director of Revenue*, 995 S.W.2d 509, 512 (Mo.App.1999); *Selix v. Director of Revenue*, 985 S.W.2d 380, 383–84 (Mo.App.1999); *Meurer*, 984 S.W.2d at 877. If RepCo manufactured the solution, then it can reasonably be inferred that it supplied the solution to the law enforcement agencies. *Meurer*, 984 S.W.2d 873, 877 (Mo.App.1999).

The Director provided sufficient evidence to prove that the simulator solution used came from an approved supplier under 19 C.S.R. 25–30.050. Therefore, the

Director laid a proper foundation for the admission of the breath test results that showed that Mr. Reynolds had a BAC of .10% or more, thus establishing a prima facie case. Since Mr. Reynolds did not offer any evidence to rebut the Director's prima facie case, the trial court's decision to reinstate Mr. Reynolds's driving privilege is against the weight of the evidence. Accordingly, this court reverses the trial court's judgment and remands this cause to the trial court for reinstatement of the Director's suspension of Mr. Reynolds's driving privileges.

All concur.