**Leister H. NEELEY, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 61330.**

Missouri Court of Appeals,
Western District.

May 20, 2003.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Kevin M. Johnson and Cheryl Nield, Assistant Attorneys General, Jefferson City, MO, for Appellant.

Robert S. Drake, Jr., Warsaw, MO, for respondent.

Before HOWARD, P.J., and ULRICH and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

On December 13, 2001, the Director of Revenue (the "Director") notified Leister Neeley ("Neeley") of the suspension of her driver's license pursuant to § 302.505 because she had been driving with a blood-alcohol content of .260. On December 18, 2001, Neeley filed a petition for review in the Circuit Court of Benton County. The circuit court heard the parties on the petition on March 4, 2002. The Honorable Larry M. Burditt entered judgment in favor of Neeley on March 19, 2002. He held that the Director failed to meet her burden of proof in showing the blood draw from Neeley met all the requirements of § 577.029 and the applicable Missouri Department of Health regulations, and ordered reinstatement of Neeley's driving privileges. On appeal, the Director argues the trial court erred in setting aside the suspension of Neeley's driving privileges because the stipulation entered into by Neeley and the Director proving a blood-alcohol content result of .260 relieved the Director from the burden of proving she fulfilled all the foundational prerequisites for the entry of the test results into evidence. Nevertheless, the Director asserts she carried her burden of proof and introduced evidence that Neeley's blood test was performed in accordance with all statutory and regulatory requirements.

We reverse and remand to the trial court to enter a judgment reinstating the suspension of Neeley's driving privileges.

## Facts

On July 2, 2001, around 1:30 p.m., Missouri State Highway Patrol Trooper Neil Atkinson ("Trooper") received report of an accident. While he was looking for the accident, a bystander flagged down the Trooper and reported an overturned vehicle with a woman inside. The Trooper saw the vehicle approximately eighty yards off the road in some trees. The only occupant of the car, Neeley, was lying across the front seat with her head in the passenger seat. The Trooper asked Neeley for her driver's license, and she told him it was in her purse on the floorboard. While speaking with Neeley, the Trooper noticed a strong odor of intoxicants. Neeley slurred her speech and appeared very confused. Neeley told the Trooper she had lost control of the vehicle and run off the road. The Trooper contacted an ambulance.

When he asked her if she had been drinking, Neeley told the Trooper, "No." Later, however, the Trooper overheard Neeley telling the emergency medicine technicians that she had been drinking vodka and water. The Trooper administered the horizontal gaze nystagmus test on Neeley, which she failed, but Neeley was unable to perform any other field sobriety tests. The Trooper then placed Neeley under arrest, and she was transported to Bothwell Memorial Hospital for treatment.

At the hospital, Corporal Michael McClain of the Missouri State Highway Patrol ("McClain") met Neeley and advised her of her rights under Missouri's implied consent law, and Neeley consented to her blood being drawn. Nurse Ross ("Ross"), the registered nurse who drew the blood from Neeley, testified it was medically safe to do so. Ross used a nonalcoholic solution, Betadine, to prepare the withdrawal site and an unused needle for the draw. He testified the sample tube for collecting the blood had a rubber stopper on one end; however, both Ross and McClain testified on cross-examination that there was something inside the collection tube that neither of them placed there nor could identify.

On December 13, 2001, the Director sent Neeley notice of the suspension of her driver's license pursuant to § 302.505 [1] because she had been driving with a blood-alcohol content ("BAC") of .260. On December 18, 2001, Neeley filed a petition for review of her suspension in the Circuit Court of Benton County. The Honorable Larry M. Burditt heard the parties on the petition on March 4, 2002. Neeley did not present any evidence. On March 19, 2002, Judge Burditt entered judgment in favor of Neeley. He found that the Director had "failed to meet his [sic] burden of proof in showing the blood drawn from the Plaintiff was done in accordance with Section 577.029 or the Department of Health regulations." This appeal follows.

## Standard of Review

After an adverse decision from the Department of Revenue, a driver may petition for a trial de novo in the circuit court. § 302.535.1; *Reynolds v. Dir. of Revenue*, 20 S.W.3d 571, 573–74 (Mo.App. W.D.2000). Our review of the circuit court's judgment after a trial de novo is

---

1. All citations are to RSMo 2000, unless otherwise noted. At the time of Neeley's arrest, suspension of a driver's license pursuant to § 302.505 required probable cause to believe that a driver was operating a motor vehicle while his or her blood-alcohol content was ten-hundredths of one percent or more. The current statute requires only eight-hundredths of one percent.

governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Reynolds*, 20 S.W.3d at 574. "The decision of the trial court must be affirmed on appeal unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law." *Id.* We will accept as true "the evidence supporting the circuit court's judgment, as well as all reasonable inferences drawn from such evidence, and will disregard all contrary evidence and inferences." *Id.*

### Argument

In her sole point on appeal, the Director argues the circuit court erred in setting aside the suspension of Neeley's license because its judgment was against the weight of the evidence and it misapplied the law in that the stipulation entered into by Neeley and the Director proving a BAC result of .260 relieved the Director from the burden of proving she fulfilled all foundational prerequisites for the entry of the test results into evidence. Nevertheless, the Director asserts she carried her burden of proof and presented evidence that Neeley's blood test was performed in accordance with all statutory requirements and health regulations. Respondent filed

no brief on appeal to rebut these contentions.[2]

At a trial de novo, the Director has the burden of proving by a preponderance of the evidence a prima facie case for suspension of a driver's license. *Haas v. Dir. of Revenue*, 975 S.W.2d 483, 484 (Mo. App. E.D.1998). The Director satisfies this burden by presenting evidence that: (1) the authorities had probable cause to arrest the driver for driving while intoxicated,[3] and (2) at the time of arrest, the driver's BAC was at least .10 percent. *Nesbitt v. Dir. of Revenue*, 982 S.W.2d 783, 784 (Mo.App. E.D.1998). In order to have a driver's BAC test results admitted into evidence as proof that the driver's BAC was at least .10 percent at the time of arrest, the Director must prove that the blood test was administered in accordance with § 577.029 and applicable Missouri Department of Health regulations. *Id.*

This court has held that there must be absolute and literal compliance with the technical requirements of § 577.029. *State v. Setter*, 763 S.W.2d 228, 230–31 (Mo.App. W.D.1988). Section 577.029 directs that only specified licensed medical personnel shall withdraw blood, that only a previously unused and sterile needle and sterile vessel shall be used to draw blood, and

2. *See Scheble v. Missouri Clean Water Comm'n*, 734 S.W.2d 541, 545 (Mo.App. E.D. 1987) (holding that "[f]ailure of a respondent to file a brief is an imposition on this court and leaves us dependent upon appellants' presentation and our own research. However, because no penalty is imposed by statute or rule, we will proceed to determine the case on its merits.").

3. Probable cause exists "when an officer possesses facts which would justify a person of reasonable caution to believe that an offense has been or is being committed and that the individual to be arrested committed it." *Edmisten v. Dir. of Revenue*, 92 S.W.3d 270, 274 (Mo.App. W.D.2002). Probable cause is

viewed in terms of how the circumstances would have appeared to a prudent, cautious, and trained police officer. *Testerman v. Dir. of Revenue*, 31 S.W.3d 473, 476 (Mo.App. W.D.2000). The following facts adduced at the hearing support the Trooper's probable cause determination that Neeley had committed the offense of driving while intoxicated: (1) the Trooper smelled a strong odor of alcohol; (2) Neeley's speech was slurred and she was very confused; (3) the Trooper overheard Neeley say she had been drinking vodka and water; and (4) Neeley failed the horizontal gaze nystagmus field sobriety test. The Director met her burden of proving probable cause.

that a nonalcoholic antiseptic is to be used to prepare the draw site. § 577.029; *Todd v. Lohman,* 911 S.W.2d 321, 323 (Mo.App. W.D.1995). The state health department mandates in 19 CSR 20–30.070 that a blood sample to be analyzed for blood-alcohol content must be collected in a clean, dry container that has an air-tight, inert stopper. 19 CSR 20–30.070(2); *Todd,* 911 S.W.2d at 323.

The circuit court did not state in its order how the Director failed to meet her burden of proving that the blood was drawn in accordance with § 577.029 and applicable regulations. We assume the trial court found that the Director did not demonstrate that a sterile, clean, and dry container was used to collect Neeley's blood, as required by § 577.029 and 19 CSR 20–30.070(2), based on the testimony elicited by Neeley's attorney during the cross-examinations of Ross and McClain that there was something in the tube used to collect Neeley's blood. Both Ross and McClain stated they did not place the substance in the tube and that they could not identify the substance.

■■■ The Director had the burden of showing compliance with all the foundational requirements of § 577.029, including the requirement that a sterile vessel be used to collect Neeley's blood. *State v. Parker,* 817 S.W.2d 920, 923 (Mo.App. S.D. 1991). However, in "absence of a specific objection, the State's failure to prove compliance with even a foundational requirement does not destroy the sufficiency of its case." *Todd,* 911 S.W.2d at 324. In *Reed v. Dir. of Revenue,* 834 S.W.2d 834 (Mo. App. E.D.1992), the circuit court found the Director failed to establish his prima facie case by not proving a breathalyzer machine had been tested within thirty-five days of the driver's breath test as required by Missouri regulations. The appellate court held that the requirement of proof of compliance with the regulations only be-

comes an issue if a proper, timely objection is made to the admission of the blood-alcohol analysis. *Id.* at 836. The court noted that an objection to evidence must be clear and definite enough for a trial court to understand the reason for the objection and to have a chance to correct any errors. *Id.* at 836–37. The court in *Erwin v. Dir. of Revenue,* 9 S.W.3d 37, 38 (Mo.App. E.D.1999), held that, "Proof of the foundational requirements for admission of a breath test result is unnecessary where the breath test result is admitted into evidence without objection."

■■ In the present case, the results of the analysis of Neeley's blood came into evidence without a proper and timely objection. The following exchange occurred at the hearing:

Mr. Louraine [Attorney for the Director]: Judge, again, with my entry of appearance and my answer I filed an Exhibit A, which is an affidavit attached to 16 pages of certified Department of Revenue records, and I would ask that those be received into evidence at this time.

The Court: Okay. I think I've found that spot in time. Okay. Mr. Drake—

Mr. Drake [Attorney for Neeley]: Yes, Your Honor.

The Court:—do you have any objection to that?

Mr. Drake: That they're all hearsay.

The Court: Besides the hearsay objection?

Mr. Drake: No.

The Court: Okay. That will be overruled.

Mr. Louraine: And, Judge, contained within those records is the lab report. And in speaking with Mr. Drake earlier today we agreed to stipulate that if Martin Lindenbusch, who is a criminalist with the Missouri State Highway Patrol

Lab, were called to testify, he would testify that the contents of that report are accurate.

Mr. Drake: That would be his testimony.

Mr. Louraine: That would be his testimony.

Mr. Drake: Yes.

Mr. Louraine: That the—That the contents of that report are accurate, that he has a Type I permit that was in effect on—on this day, that he received a sealed box containing a tube of blood labeled Neeley, Leister H., and that he analyzed that using gas chromatography, and the blood had an ethyl alcohol content of .260.

The Court: All right. Anything else?

Mr. Louraine: With—With that, the State would rest.

The Court: Any evidence from the—

Mr. Drake: No evidence, Your Honor. I do have a bit of argument.

The Court: Okay. That'll conclude the hearing, then. We're through with evidence.

We do not agree with the Director that Neeley stipulated to the BAC test results; rather, it appears from the record she stipulated that, if called to testify, Mr. Lindenbusch would testify that the contents of his report were accurate. It is clear, however, that Neeley did not make a specific and timely objection to the admission of the BAC test results. Therefore, it does not matter that the Director did not prove the foundational requirements of § 577.029 and 19 CSR 20–30.070(2). We find the Director met her burden by making her prima facie case.

In an apparent attempt to rebut the Director's case, Neeley elicited testimony that there was "something" in the tube used to collect blood. What, when, why, how and who is unknown and does not point to any specific statutory or health regulation that was violated. The trial court cannot rely on an inference based upon speculation to determine the Director's case was rebutted. *Testerman v. Dir. of Revenue,* 31 S.W.3d 473, 483 (Mo. App. W.D.2000).

## Conclusion

We find the trial court erred in ordering the Director to reinstate Neeley's driving privileges. We reverse and remand for the trial court to enter a judgment reinstating the suspension of Neeley's driving privileges.

ULRICH and HARDWICK, JJ., concur.