872

*In re* T.D., a Minor—(The People of the State of Illinois, Petitioner-Appellee, *v.* T.D., Respondent—Appellant).

Second District   No. 82—110

Opinion filed June 2, 1983.

G. Joseph Weller and Manuel Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Theodore J. Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission,

of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Respondent, T.D., was named in a petition for adjudication of wardship, filed in the circuit court of McHenry County, alleging that the minor had made unlawful use of an intoxicating compound (Ill. Rev. Stat. 1981, ch. 38, par. 81—1). Following a hearing, the trial court found that the allegations of the petition had been established beyond a reasonable doubt and placed the minor on one year probation, weekend detention and 50 hours of public service. Respondent appeals, contending that the trial court erroneously considered hearsay evidence and that, in the absence of that hearsay, there was a failure of proof of an essential element of the State's case.

Officer Anthony Militano of the city of McHenry Police Department testified that shortly after 9 a.m. on September 21, 1981, he overheard some giggling and laughing and observed three juveniles exit from the bushes or hedges behind the McHenry Office Shop. He observed one of the juveniles drop what appeared to be a bag on the ground, which he retrieved. The officer testified that he had built models when he was young, had had occasion to smell model airplane glue and believed that the substance in the bag smelled like model airplane glue. Upon looking into the bag, Officer Militano found a moist substance located at the bottom, and he secured the bag as evidence. He next conducted a pat-down of the three juveniles and found two tubes of glue on respondent's person, inside the breast pocket of his jacket. The officer recovered another bag at the scene containing a third tube of glue, but he could not recall where the bag came from. The minors were then transported to the police station, where respondent made a statement in which he admitted sniffing the glue.

Officer Roger E. Peckas generally confirmed the testimony of Officer Militano, including Militano's description of the bag and the appearance and odor of the substance inside. While Officer Peckas was transporting respondent to the police station, respondent stated that before entering the vehicle he had dropped a bag with more glue in it outside. Officer Peckas also overheard respondent admit to having sniffed glue. When asked why they were sniffing glue, respondent said that they "just wanted to see what kind of buzz they would get."

Randy Boltinghouse and Pat Mieszala, respondent's companions on the morning of September 21, testified that they had purchased three tubes of glue that morning and had gone into the bushes behind some stores to sniff it. Both testified that respondent had inhaled from a bag containing glue. Mieszala testified that he sniffed the glue

"to get a buzz" and responded in the affirmative when further asked if he did it to get high. Officer Gary R. Wigman received the tubes of glue and other physical evidence involved in the case from Officer Militano and retained it in his custody pending trial. Officer Wigman examined the tubes of glue in open court and read a portion of the label aloud. That portion of the label read,

"Do not use near fire or flame.

\*\*\*

Contents: Tuluol [*sic*]. Avoid prolonged contact with skin. Do not breathe vapors. Harmful, fatal if swallowed. If swallowed, do not induce vomiting. Call physician at once. Keep from small children."

Defense counsel objected to the reference to Toluol and asked that it be stricken as hearsay. The assistant State's Attorney responded that the label was a public document which he believed to be required by law. The court overruled the objection, indicating that the evidence speaks for itself. Over objection, it admitted the tubes themselves into evidence.

Respondent testified on his own behalf that he encountered Boltinghouse and Mieszala on the morning of September 21, at which time they asked him if he wanted to get "about a ten minute buzz" by sniffing glue. After the glue was purchased, respondent observed each of the other minors inhale from the bag. Respondent had previously injured his nose, and when his turn came to inhale from the bag he discovered that inhaling the glue caused his nose to burn. He therefore handed the bag back. Respondent, when asked to define the word "buzz" stated, "[i]t's not a high. It's just feeling good \*\*\*." He acknowledged knowing that he would have to purchase model glue for this purpose, but denied having read the label on the tubes which he purchased.

On appeal, respondent challenges the ruling whereby Officer Wigman was allowed to read from the label on one of the tubes of glue concerning the contents of that container. Defendant challenges this as hearsay, an extrajudicial statement offered in court as proof of the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) Since the witness had no personal knowledge as to the manufacture of the tube or its contents and since his reading from the label was done for the purpose of proving the identity of those contents, defendant concludes that the trial court was required to exclude this evidence under the hearsay rule. Respondent further maintains that introduction of this testimony denied him his sixth amendment right (U.S. Const.. nend. VI) to confront and

cross-examine adverse witnesses.

In support of the trial court's ruling admitting this evidence, the State proffers several theories of admissibility, premised on the notion that there are sufficient circumstantial guarantees of the truthworthiness of the information printed on the label, such that the evidence either is not hearsay or falls within an exception to the hearsay rule. Thus, the State defends the evidence alternatively as a business record, as analogous to a public document or as independently admissible real evidence.

■■ The first question presented by this case is whether hearsay evidence was admitted to prove the contents of the tube of model cement. Respondent does not challenge the admissibility of the tube of glue itself as real or demonstrative evidence. Hearsay has been defined as " 'testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 801.1, at 392 (3d ed. 1979).) "However, in many situations, testimony may be offered of an out-of-court assertion to prove the facts of the matter asserted, and yet the reason for the exclusion of hearsay evidence will be absent." (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226.) "The basis for excluding evidence under the hearsay rule lies in the fact that an opportunity to ascertain the veracity of the testimony is absent [citation], and not that the evidence offered may technically fall within the definition of the term. Thus, the essential requirement of the testimonial offering is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the fact asserted." 81 Ill. 2d 571, 577-78, 411 N.E.2d 223, 226.

■■ In the instant case, the notation on the label was a statement by the manufacturer as to the contents of the product. As such, it was an assertion of fact by an out-of-court declarant, offered in court by the State, to prove the truth of the matter asserted, *i.e.*, that the glue contained Toluol. When offered for this purpose, the information written on the label and the in-court reading of that information were hearsay. *Wirth v. State* (1972), 55 Wis. 2d 11, 197 N.W.2d 731.

The State maintains that this evidence, even if hearsay, was admissible as a business record (87 Ill. 2d R. 236; Ill. Rev. Stat. 1981, ch. 38, par. 115—5(a)), or, by analogy, as akin to a public document. A writing may qualify as a business record where made as a memorandum or record of an act, transaction, occurrence or event, provided the writing was made in

the regular course of business. The State acknowledges that no testimony was received concerning the preparation of the label, but urges that the business character of the label and its information are sufficiently apparent that the evidence is virtually self-authenticating. While it appears from the face of the label that the information in question was intended to be a record of an occurrence or event, and that it was made in the regular course of business, the record fails to establish directly that it was in the regular course of business for the manufacturer to label its product with a description of its contents. Since the "dependability of regular entries rests upon proof of a routine of making accurate records" (E. Cleary & M. Graham, Handbook of Illinois Evidence, sec. 803.10, at 442 (3d ed. 1979)), the inquiry becomes whether there has been any acceptable showing that the label entries are made in the regular course of business.

In the case at bar, however, there was no showing or foundation made for the assertion that these were business records. Typically, business records are admissible upon the testimony of a person familiar with the business and its mode of operation, identifying the writing and establishing that a routine was followed producing accuracy; neither the original entrant nor the individual possessing knowledge of the event itself need be produced. *Nussbaum Trucking, Inc. v. Illinois Commerce Com.* (1981), 99 Ill. App. 3d 741, 748, 425 N.E.2d 1229; E. Cleary & M. Graham, Handbook of Illinois Evidence, sec. 803.10, at 442 (3d ed. 1979).

The State analogizes this case to one involving a public document. (See *People v. Ziebell* (1967), 82 Ill. App. 2d 350, 227 N.E.2d 127; *People v. Fair* (1965), 61 Ill. App. 2d 360, 210 N.E.2d 593.) However, the label in question was not prepared by a public official or agency or for the conduct of public business, and the exception therefore is inapplicable.

Although we do not believe the label was shown to be an exception to the hearsay rule as a business record or a public document, we believe it was still properly admissible. The label on the glue was sufficiently reliable and trustworthy on its face to be considered an exception to the hearsay rule.

We note that the label on the product in the instant case was required to be on the product. Though the parties make no argument in this regard, there is a statutory requirement that products containing Toluol be labeled accordingly, and this requirement is found in the Uniform Hazardous Substances Act of Illinois (Ill. Rev. Stat. 1981, ch. 111½, par. 251 *et seq.*). That Act provides that any substance which is toxic (Ill. Rev. Stat. 1981, ch. 111½, par. 252—5), an irritant (Ill.

Rev. Stat. 1981, ch. 111½, par. 252—8), or flammable (Ill. Rev. Stat. 1981, ch. 111½, par. 252—10) is a hazardous substance when it may "cause substantial personal injury or illness during or as a proximate result of any customary or reasonably anticipated handling or use including reasonably foreseeable ingestion by children ***." (Ill. Rev. Stat. 1981, ch. 111½, par. 252—4.) Such a substance is considered a "[m]isbranded hazardous substance" unless it is conspicuously labeled with, *inter alia*, the name and place of business of the manufacturer, the common or usual name or the chemical name of the hazardous substance, an affirmative statement of the principal hazard posed by the substance and precautionary measures describing the action to be taken if the substance is used. (Ill. Rev. Stat. 1981, ch. 111½, par. 252—15.) Among other acts, the manufacture, distribution, sale of offer for sale of a misbranded hazardous substance is prohibited by law (Ill. Rev. Stat. 1981, ch. 111½, par. 262), and violators may be subject to various penalties including injunctive relief (Ill. Rev. Stat. 1981, ch. 111½, par. 266). (See also the provisions of the Federal Hazardous Substances Act, 15 U.S.C. sec. 1261 *et seq.*) Since the labeling of hazardous substances is required both by Federal and Illinois law, we conclude that the trustworthiness of the label is beyond suspicion and though technically it does not meet the requirements for a business record, it should be an exception from the rule against hearsay.

This analysis appears to be consistent with the general rule regarding trade inscriptions. That rule, as summarized by leading commentators, provides that "[i]nscriptions, signs, tags, or labels purported to have been affixed in the course of business and indicating ownership, control, or origin, should be considered self-authenticating. The basis for self-authentication of these items is the day-to-day reliance by members of the public on their correctness and the unlikelihood of fabrication." E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 902.6, at 498-99 (3d ed. 1979).

The State cites a line of cases which generally hold that the writing on a product's label is competent proof of the contents. The courts which advance this theory have reasoned that "inscriptions designedly placed on bottles, boxes, or other packages, in the ordinary way, for the obvious purpose of indicating their nature or contents, may in general be regarded as competent evidence thereof, at least against those persons who have such objects in their possession, or who dispense them to others." (*Sneed v. State* (1955), 235 Ind. 198, 201, 130 N.E.2d 32, 33; *Kennedy v. State* (1913), 182 Ala. 10, 17, 62 S. 49, 52.) The court in *Sneed* observed that, although the labeled boxes had not been opened or examined as to their contents, "[t]hey

were so identified and described that there could be no doubt in the minds of reasonable men as to the actual contents of the boxes or cartons." 235 Ind. 198, 200, 130 N.E.2d 32, 33; accord, *Dixon v. State* (1953), 159 Tex. Crim. App. 258, 262 S.W.2d 488.

Here, the label was statutorily required, and the information contained on that label was more than a mere gratuitous statement regarding the contents of the product. In fact, information was combined with warnings about the potential for harm posed by the product and directions as to how to proceed if this potentially lethal product were ingested. Any misinformation in these particulars would not only constitute a violation of law but, where harm resulted to users of the product, would almost certainly provide a basis for imposition of civil liability upon the manufacturer. The reliability of the information on the label was bolstered by the circumstances under which the tube was packaged and purchased. Those circumstances included the fact that the tube was purchased by respondent and his friends from a retailer shortly before its use and that the product was packaged in a tube with a narrow point about the size of a pinhead, thus reducing the opportunities for any tampering with, or adulteration of, the substance. The particular factual circumstances of this case, together with the statutory requirement that the product be labeled in detail, combine to make this admissible in spite of the hearsay rule.

Thus, even though the notation on the label may not be considered a business-record exception to the hearsay rule, we conclude it was sufficiently trustworthy to be an exception. Thus, there was competent evidence that the glue contained Toluol and the *corpus delicti* was proved by the State.

For the reasons stated the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.