**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Shawn D. DAGGETT, Defendant–
Appellant.**

No. 26157.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 1, 2005.

Rehearing Denied Aug. 23, 2005.

Application for Transfer Denied
Sept. 20, 2005.

John M. Albright, Daniel T. Moore, Poplar Bluff, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Shawn D. Daggett ("Appellant") was charged, as a prior and persistent offender, with the class D felony of possession of drug paraphernalia with intent to use the paraphernalia in combination with each other to manufacture methamphetamine, pursuant to Section 195.233.[1] Following his conviction by a jury, he was sentenced to four years imprisonment.

The facts of the case are as follows: Deputy Sheriff Craig Bolin ("Deputy Bolin") was patrolling in Stoddard County, Missouri, during the night of July 24, 2003, and the early morning of July 25, 2003. At about 11:30 P.M. on July 24, he noticed a small, gray GMC pickup truck traveling east on U.S. Highway 60, west of Dexter, Missouri, cross the center line several times. He also noticed that the truck's license plate light was not working. Deputy Bolin stopped the vehicle that was occupied by Appellant and Amy Guzman ("Guzman").

Deputy Bolin told Appellant why he had stopped them, and asked Appellant where they were going. Appellant replied that he and Guzman were going to Saxton, Missouri to stay all night with a friend. Deputy Bolin testified that Appellant spoke with a nervous, shaky voice and that he noticed a propane cylinder without a valve sitting in the bed of the pickup truck. He also noticed a large brass valve sitting in the bed beside the cylinder. Deputy Bolin asked Appellant if he could search the vehicle and Appellant gave him permission to do so, but the search produced no additional items. When Deputy Bolin asked Appellant about the propane tank, Appellant told him that he had not had time to get the valve replaced on the tank. Deputy Bolin also asked about the brass

---

1. All statutory references are to RSMo (2000) unless otherwise specified.

valve, and Appellant stated that it was his father's and that it had something to do with anhydrous ammonia, but he was not sure what. In responding to Deputy Bolin's question about whether he thought the items were suspicious, Appellant told him that he knew that people used the items to steal anhydrous ammonia, but that he did not do that sort of thing. Deputy Bolin asked both Appellant and Guzman if they had come to Stoddard County to steal anhydrous ammonia, and both replied that they had not. He then told them that they were free to go.

Deputy Bolin continued his patrol on Highway 60, and about thirty minutes later arrived in Essex, Missouri. He regularly patrolled Essex because of thefts of anhydrous ammonia at the Ross Cotton Gin. As he approached the gin, he saw some headlights come on behind a building and saw a vehicle moving near the anhydrous ammonia storage area. Deputy Bolin turned around in a driveway and faced the opposite direction, so as to face the vehicle as it came toward him. The vehicle approached the intersection near where Deputy Bolin sat, stopped for an unusual length of time, and turned left. Deputy Bolin noticed that it was the same vehicle that he had stopped earlier, and he followed the truck as it made another turn and then stopped in the roadway. Deputy Bolin activated his emergency lights, got out of his vehicle, and noticed that Appellant was approaching his car. Although he told Appellant to go back and get into his vehicle, Appellant went back and stood by the driver's side door. Guzman remained in the truck.

Deputy Bolin approached the truck and asked Appellant what he was doing stopped in the road. Appellant replied that he was looking for "Mary's house." He said that he thought she lived in Essex, but he was not sure where and he did not know her last name. Deputy Bolin noticed that the propane cylinder and the brass valve were still in the back of Appellant's pickup truck. Appellant said, "Well, if this is about the tank and valve, I'm not—we weren't going to steal anything. We weren't going to do anything over there. And if you want to, you can just have that tank and valve and take it with you."

Deputy Bolin returned to his car, contacted his dispatcher regarding the stop, and asked the dispatcher to contact Deputy Dennis Fowler ("Deputy Fowler") of the SEMO Drug Task Force. Deputy Fowler arrived about fifteen minutes later. He recognized Appellant's vehicle as one he had seen on May 7, 2003, in Butler County, Missouri, when he and Deputy Scott Johnston, a narcotics officer with the SEMO Drug Task Force, ("Deputy Johnston") were serving an arrest warrant. Deputy Fowler noticed that the propane cylinder had the valve removed and testified that in his investigation of methamphetamine laboratories, he had seen many tanks similar to this one with the valves taken off. He also stated that he had seen many valves similar to the brass valve in the back of Appellant's truck during his investigations and that those valves were used to capture anhydrous ammonia in a tank similar to the propane cylinder found in Appellant's truck. He said that neither of these items could be used separately in the manufacture or production of methamphetamine. The items could be combined in that manufacture, however, by filling the tank with anhydrous ammonia and then screwing the valve into the top of the tank to prevent the anhydrous ammonia from evaporating. A tank such as that is used to store the anhydrous ammonia until it is time to "cook" the methamphetamine, at which time the valve can be removed to release the anhydrous ammonia. Typically, in order to steal anhydrous ammonia, a hose would be used to transfer it from the

storage tank to the propane cylinder. No hose was found in Appellant's possession or in the area, though Deputy Fowler said he does not always find hoses when someone is trying to steal anhydrous ammonia. There was no discoloration of the propane cylinder or the valve consistent with exposure to anhydrous ammonia, and there was no anhydrous ammonia found in the propane cylinder on the night of the stop. Appellant and Guzman were arrested.

Missouri Highway Patrolman Chris Graves ("Patrolman Graves") testified that he spoke with Appellant on the afternoon of July 25, 2003. He advised Appellant of his *Miranda* rights before speaking with him, and Appellant stated that he understood his rights and agreed to speak with Patrolman Graves. Appellant informed Patrolman Graves that he and Guzman had a plan to steal anhydrous ammonia. Appellant stated that Guzman, with whom he was in love, was addicted to methamphetamine and that she wanted him to help her acquire some. He said they planned to steal anhydrous ammonia then trade it to a methamphetamine cook for some of the drug. Patrolman Graves also testified about the use of the propane cylinder and the valve in the manufacture of methamphetamine, stating that such tanks were commonly used to store and transport anhydrous ammonia, with the valve capping the tank. He testified that it would be possible, but not preferable, to obtain anhydrous ammonia using the propane cylinder without using a hose.

Finally, Deputy Johnston testified regarding his previous contact with Appellant. He described an incident in Butler County, Missouri, where Appellant and Guzman drove up to a residence while

Deputy Johnston was there serving an arrest warrant. Deputy Johnston observed that a partial methamphetamine laboratory was in the back of Appellant's truck at that time, including two glass jars containing a clear liquid ("seed jars"), an acid generator, and salt. He testified that these items are typically used in the manufacture of methamphetamine.[2]

Appellant presents three points on appeal. We will set out his first point relied on verbatim as the State contends that Appellant makes arguments not included in this point.

> The trial court erred in denying the motion for judgment of acquittal in that the law requires jury instructions to be supported by substantial evidence and instruction no. 5 required proof the Appellant was combining drug paraphernalia but the only paraphernalia the Appellant possessed was an LP tank consisting of a tank and valve.

Appellant was convicted under Section 195.233, which states:

1. It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance in violation of sections 195.005 to 195.425.

2. A person who violates this section is guilty of a class A misdemeanor, unless the person uses, or possesses with intent to use, the paraphernalia

---

2. There is no information in the record conclusively demonstrating whether Appellant was arrested or charged on this occasion. However, Appellant's attorney claimed in his argument in favor of a motion in limine that Appellant was arrested but not charged on this occasion.

in combination with each other to manufacture, compound, produce, prepare, test or analyze amphetamine or methamphetamine or any of their analogues in which case the violation of this section is a class D felony.

The statute requires that for a class D felony, the paraphernalia must be possessed with intent to be used "in combination with each other to manufacture" methamphetamine. *Id.*

Jury Instruction No. 5 was the verdict directing instruction, patterned after MAI–CR (3d) 325.22 (1999) relating to Section 195.233, though modified to submit the unlawful possession of paraphernalia as a class D felony. It stated, in pertinent part:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 25, 2003, in the County of Stoddard, State of Missouri, [Appellant] possessed a propane tank and a connecting valve, and

Second, that the propane tank and connecting valve were drug paraphernalia, and

Third, that [Appellant] knew or was aware of its presence and nature, and

Fourth, that [Appellant] intended to use the propane tank and connecting valve in combination with each other to manufacture or prepare methamphetamine.

Then you will find [Appellant] guilty of possession of drug paraphernalia with intent to use.

Appellant argues that the propane cylinder and valve are not paraphernalia under the definition as those items are not used to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." *See* Section 195.233.1. He also contends that the propane cylinder and valve do not fall under the statutory definition of paraphernalia contained in Section 195.010(17), which is substantially similar to Section 195.233.1 and contains a non-exclusive list of items of paraphernalia. He argues that as the propane cylinder and valve are only used to store anhydrous ammonia, an ingredient in the manufacture of methamphetamine, and not used in the process of making methamphetamine, the items are, therefore, not paraphernalia under the definition.

The State argues that Appellant has not preserved his contention that the items do not constitute paraphernalia as he did not include it in his point relied on. It claims that Appellant's point admits that the items are paraphernalia when it states "the only paraphernalia Appellant possessed was an LP tank consisting of a tank and valve." It then argues that even if we were to consider this argument, the definition of paraphernalia would encompass the propane cylinder and valve.

Appellant, in his reply brief, contends that he has preserved his argument for review. He argues that the legal theory he advanced was the lack of substantial evidence to support the giving of Instruction No. 5 and that he can advance any reasoned theory under the facts to support his contention. He claims that there is no confusion caused by "leaving out the word 'alleged' in front of the word paraphernalia in the point relied on."

We agree with the State that Appellant has not preserved for our review the portion of his argument that the cylinder and valve, whether a single item of paraphernalia or two items, do not fall under the definition of paraphernalia. His point relied on clearly states "but the only

paraphernalia the Appellant possessed was an LP tank consisting of a tank and valve." While Appellant argues that we can read into this statement that he meant to say alleged paraphernalia, the clear wording of his point does not make this apparent and admits that the propane cylinder and valve are paraphernalia, with his argument being that these are not separate items. We only consider arguments raised in the points relied on and do not consider arguments raised in the argument portion of the brief which are not encompassed by the points relied on. *State v. Paxton,* 140 S.W.3d 226, 231 n. 6 (Mo.App. S.D.2004). Furthermore, if we were to consider that Appellant had raised this argument in his point relied on, this point would then be in violation of Rule 84.04 in that it raises multiple, unrelated issues in the same point relied on. " 'Improper points relied on, including those that are multifarious, preserve nothing for appellate review.' " *Carmack v. Carmack,* 148 S.W.3d 321, 324 (Mo.App. S.D.2004) (quoting *Stelts v. Stelts,* 126 S.W.3d 499, 504 (Mo.App. S.D. 2004)). He would be arguing, in the same point, that the propane cylinder and valve are not two pieces of paraphernalia, but one, and also that the cylinder and valve do not fall under the statutory definition of paraphernalia. We will, however, review the portion of Appellant's argument properly preserved for review.

■ When an appellant challenges the sufficiency of the evidence to support a conviction, "we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary." *State v. Naasz,* 142 S.W.3d 869, 875 (Mo.App. S.D. 2004).

■ Appellant contends that Section 195.233.2 necessarily requires that there be at least two items of paraphernalia,

otherwise there would be no meaning to the clause "in combination with each other." He then contends that the propane cylinder and the valve are not separate items of paraphernalia, but one item of paraphernalia consisting of a cylinder and a valve used to transport one ingredient used in the manufacture of methamphetamine. He cites the fact that the State's witnesses observed that neither item was useful by itself in support of his claim. The State argues that the evidence shows that the propane cylinder and valve are not a single item, but two separate items. It contends that the testimony shows that the valve was not the original valve for the propane cylinder and that the original valve had been removed.

The State's witnesses testified that the propane cylinder in the back of Appellant's truck had its original valve removed, leaving the cylinder open to the air. They also testified that a brass valve, not the original valve for the cylinder, was in the back of the truck. Appellant's own statements to Deputy Bolin recognize that the cylinder is missing its original valve and that the brass valve in the truck had something to do with anhydrous ammonia and belonged to his father. Furthermore, several witnesses demonstrated how the two items could be combined by screwing the valve into the tank.

Though Appellant argues that the State's witnesses' testimony that the cylinder and valve have no separate use shows that they are in fact one item, there is no requirement in Section 195.233.2 that the combined items of paraphernalia be otherwise useful independent of each other in the manufacture of methamphetamine. The jury could have concluded from this evidence that the propane cylinder and valve were separate items. Appellant's first point is denied.

In his second point, Appellant claims that the trial court erred in admitting Appellant's statements to Patrolman Graves in that it did not first introduce independent proof of the *corpus delicti*. He further contends that as possession of a propane cylinder is not illegal, there was no *corpus delicti* aside from Appellant's statements.

Patrolman Graves testified regarding Appellant's statement as follows:

> [Appellant] told me that he was in love with [Guzman], that she was addicted to methamphetamine and that she wanted to get some methamphetamine. She wanted him to help her get the methamphetamine. Their plan was to steal the anhydrous ammonia from the co-op, trade the anhydrous ammonia to a methamphetamine cook so they could receive methamphetamine for [Guzman].

▆ Appellant claims that possession of the propane cylinder is not illegal and that no hose, which the officers testified would be necessary to transfer the anhydrous ammonia to the cylinder, was found. He also contends that the propane cylinder did not display the discoloration which occurs when such a tank is used to store anhydrous ammonia. He cites *State v. Crenshaw*, 59 S.W.3d 45, 49 (Mo.App. E.D. 2001), for the proposition that where no evidence of a crime exists other than the

confession of the defendant, the conviction must be reversed.[3]

▆ The admission or exclusion of evidence at trial is in the trial court's broad discretion and we will only reverse if an abuse of that discretion has occurred. *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). "The *corpus delicti* rule is essentially evidentiary in nature because it determines whether the defendant's confession of guilt may be considered substantive evidence of guilt." *State v. Miller*, 139 S.W.3d 632, 637 (Mo.App. S.D.2004). Generally, " '[e]xtrajudicial admissions, statements or confessions of the accused are not admissible in evidence absent independent proof, either circumstantial or direct, of the essential elements of the corpus delicti.' " *State v. Evans*, 992 S.W.2d 275, 284 (Mo.App. S.D.1999) (quoting *State v. Friesen*, 725 S.W.2d 638, 639 (Mo.App. W.D.1987)). "All that is required is evidence of circumstances tending to prove the corpus delicti corresponding with the confession." *Madorie*, 156 S.W.3d at 355 (quoting *State v. Hahn*, 640 S.W.2d 509, 510 (Mo.App. S.D.1982)). There is no requirement of full proof of the corpus delicti independent of the defendant's confession. *Miller*, 139 S.W.3d at 637. "Only 'slight corroborating facts' are needed to authorize the admission of a defendant's incriminating statements in evidence." *Id.* "If there is evidence of corroborating circum-

---

**3.** Appellant appears to make a new argument in his reply brief that the State attempted to convict him on the basis that he possessed the items of paraphernalia not with an intent to manufacture methamphetamine personally, but to deliver the items, and anhydrous ammonia, to someone else who would actually manufacture the methamphetamine. He contends that Section 195.233 requires that he have a personal intent to manufacture or produce methamphetamine, and that the term "use" in the statute does not extend to people "who have in their possession or sell items they know will be used in the manufacture of methamphetamine." Appellant argues that as he did not personally intend to use the paraphernalia to manufacture methamphetamine, and there is no evidence of such intent, then there was not sufficient evidence to support his conviction. However, "[r]eply briefs are solely to be used to 'reply' to arguments made by respondents in their briefs to our court and not to raise new points on appeal." *Kramer v. Mason*, 806 S.W.2d 131, 134 (Mo.App. E.D.1991). As such, we cannot review Appellant's new argument. *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 304 (Mo.App. E.D.1997).

stances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circumstances and the confession may be considered in determining whether or not the corpus delicti has been established." *Id.* (quoting *City of St. Louis v. Watters*, 289 S.W.2d 444, 446 (Mo.App.St.L.1956)). Furthermore, "[e]vidence of the *corpus delicti* need not precede a defendant's admission so long as the essential elements of the crime are proved by the end of the trial." *Evans*, 992 S.W.2d at 285. "The determination of whether there is sufficient independent evidence of the corpus delicti of an offense is fact specific and requires a case-by-case evaluation." *Madorie*, 156 S.W.3d at 355.

▮ Appellant was charged with possession of paraphernalia with the intent to use that paraphernalia in combination with each other to manufacture methamphetamine. The *corpus delicti* of this crime requires proof that the defendant possessed at least two items of paraphernalia and had the intent to use those items in combination with each other to manufacture methamphetamine. Section 195.233.2. There was testimony from Deputy Bolin and Deputy Fowler that Appellant had a propane cylinder and a brass valve in his possession at the time of his arrest. There was testimony from Deputy Fowler and Patrolman Graves as to how the propane cylinder and valve could be combined in order to store the anhydrous ammonia. Deputy Fowler testified that in his experience he had seen similar propane cylinders and valves that were used to store anhydrous ammonia for use in the manufacture of methamphetamine. Furthermore, Appellant's statements to Deputy Bolin during the first traffic stop indicate his knowledge that such items are used to steal anhydrous ammonia. This evidence is sufficient to establish the *corpus delicti* of

possession of the paraphernalia and combination of the paraphernalia.

As for independent evidence establishing Appellant's intent, the State presented evidence that Appellant's vehicle was seen "[i]n this area of Essex, of course, basically all there is—This is the Ross Cotton Gin on this side—this whole area. These [referring to an illustration] are two large anhydrous storage tanks, you know, really big." There was testimony that anhydrous ammonia had been stolen from the cotton gin before. It also presented evidence that Appellant knew that items such as the propane cylinder and valve could be used to steal anhydrous ammonia and make methamphetamine. The State presented evidence of Appellant's erratic behavior at the stop in Essex, including the fact that he stopped his vehicle in the middle of the street, got out, and approached Deputy Bolin without being told to do so and without Deputy Bolin first turning on his emergency lights or siren; the fact that he was in Essex after having told Deputy Bolin one-half hour earlier that he was going to Saxton to stay the night with friends; his statement that he was there to see "Mary," but did not know her last name or where she lived; and, his statement that "[w]ell, if this is about that tank and valve, I'm not—we weren't going to steal anything. We weren't going to do anything over there. And if you want to, you can just take that tank and valve and take it with you." The State also introduced evidence that Appellant had previously possessed other items of paraphernalia commonly used in the manufacture of methamphetamine, including an acid generator, seed jars, and salt.

*Crenshaw*, 59 S.W.3d at 49, relied upon by Appellant, is distinguishable from the current situation because here, unlike *Crenshaw*, the State presented independent evidence of the crimes charged. We

find that this independent evidence was sufficient to meet the requirement of "slight corroborating facts" to warrant admission of Appellant's statement. Appellant's second point is denied.

In his third point, Appellant contends that the trial court erred in admitting the propane cylinder, valve, and his statements after his arrest in that the evidence should have been suppressed because he claims that his arrest was not based upon probable cause.

Before trial, Appellant filed three motions to suppress. His first two sought to suppress any statements he made and the physical evidence recovered during his arrest, claiming that there was no probable cause to place him under arrest. The trial court denied both of these motions. He later filed another motion to suppress statements he made following his arrest, claiming that he was promised that if he gave information and signed an affidavit, he would be released after twenty hours and no charges would be filed. The trial court also denied this motion.

■■■■ Usually, a motion to suppress is interlocutory in nature, and in order to be preserved, an objection must be made to the introduction of the evidence at trial. *State v. Reed,* 157 S.W.3d 353, 356 (Mo. App. W.D.2005). "Where a motion to suppress was overruled and the evidence was introduced at trial, appellate review considers the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted." *Id.* We examine the whole record and the totality of the circumstances, and affirm if its denial is supported by substantial evidence. *State v. Moore,* 99 S.W.3d 579, 582 (Mo.App. S.D. 2003). We defer to the trial court's opportunity to determine the weight of the evidence and credibility of the witnesses when deciding whether sufficient evidence

supports the trial court's determination. *Id.*

In addition to filing his motions to suppress, Appellant objected to the admission of his statements following his arrest and the admission of the physical evidence at trial, and raised the issues in his "Motion for Judgment of Acquittal at the Close of the State's Case" and in his "Motion for Judgment of Acquittal at the Close of All the Evidence." He properly preserved his objections to the admission of the physical evidence in his motion for new trial, though he failed to include in that motion his objection to the admission of his statements. As such, we may only review his claim of error as to the admission of his statements for plain error under Rule 30.20, and will only reverse if a manifest injustice or miscarriage of justice resulted from the admission of his statements. *See State v. Lebbing,* 114 S.W.3d 877, 880 (Mo. App. S.D.2003).

■■■■ Appellant claims that there was no probable cause to support his arrest because the only evidence that the arresting officers had was Appellant's possession of a propane cylinder and valve, and knowledge of Appellant's reputation. He argues that it is not illegal to have a propane cylinder in one's possession, and, furthermore, Appellant lacked a piece of equipment he would need to steal anhydrous ammonia, a hose. He claims that the only reason he was arrested after the second stop was his proximity to the anhydrous ammonia storage tanks in Essex, Missouri. As to his reputation, he argues that reputation evidence is not enough for probable cause, citing *State v. Crum,* 536 S.W.2d 507 (Mo.App.Spfd.1976). Furthermore, he contends that the only evidence of reputation known to Deputy Fowler, the arresting officer, "was that he had [previously] encountered [Appellant] at the scene where he was executing an arrest

warrant." He contends that the arresting officers had no knowledge of what was contained in Appellant's truck on the prior encounter with Deputy Fowler, as the State introduced evidence of the contents of the truck at that time through the testimony of Deputy Johnston, who was not at the scene where Appellant was arrested.

▆▆▆ "A warrantless arrest is valid so long as the officer has probable cause to believe that the suspect has committed a crime." *State v. Shaw*, 81 S.W.3d 75, 77–78 (Mo.App. W.D.2002). "Probable cause is determined by the collective knowledge and facts available to all of the officers participating in the arrest; the arresting officer does not need to possess all of the available information." *State v. Witte*, 37 S.W.3d 378, 382 (Mo.App. S.D.2001). These facts and knowledge, alone, must "warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Glass*, 136 S.W.3d 496, 510 n. 5 (Mo. banc 2004) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). "The practical considerations of everyday life on which a reasonably prudent person acts, not the hindsight of legal technicians, governs the probable cause determination." *Witte*, 37 S.W.3d at 382. Furthermore, "an officer who is lawfully located in a place from which [an] object can plainly be seen may seize the object so long as there is probable cause to believe that the object is connected with the crime." *State v. Johnston*, 957 S.W.2d 734, 742 (Mo. banc 1997).

At the hearing on the motions to suppress, Deputy Bolin, Deputy Fowler, Patrolman Graves, and Deputy Johnston all testified on behalf of the State. Their testimony was substantially similar to the testimony given at trial. In addition to the testimony he gave at trial, Deputy Bolin stated that when he stopped Appellant for the second time and spoke to him, he was more nervous than he was when he was stopped earlier. He did not place Appellant under arrest, but waited for Deputy Fowler to arrive on the scene, intending to place Appellant under arrest for attempting to steal anhydrous ammonia if Deputy Fowler was unavailable. He further stated that at the time Appellant was stopped, around midnight, there was no other traffic in Essex and nothing was open.

Deputy Fowler testified at the hearing as to his prior encounter with Appellant and Guzman, stating that he encountered them while serving an arrest warrant in Butler County a couple of months earlier, where he noticed methamphetamine laboratory chemicals and paraphernalia in the back of Appellant's truck. He also spoke with Deputy Johnston, before arriving on the scene, about the reputation of Appellant, and Johnston reminded him of their encounter with Appellant in May. Deputy Fowler made the decision to place Appellant and Guzman under arrest shortly after he arrived at the scene in Essex. He based his decision on the fact that Appellant was in close proximity to anhydrous ammonia storage tanks; that he had paraphernalia in his possession, consistent with what he had seen on other occasions, that could be used to steal anhydrous ammonia; and, that he knew Appellant and Guzman were involved in the methamphetamine scene. Deputy Fowler also stated that it was common practice in Stoddard County that when an officer suspects someone of stealing anhydrous ammonia, they first call Deputy Fowler and wait for him to arrive before placing anyone under arrest. Deputy Johnston confirmed Deputy Fowler's testimony regarding his contact with Deputy Fowler on the night of Appellant's arrest and the prior encounter in May of 2003.

As we observed in our discussion of Appellant's second point, both Deputy Bolin and Deputy Fowler had the opportunity to observe the propane cylinder and valve, which was in plain view in the bed of Appellant's pickup truck. Deputy Fowler, from his experience on the SEMO Drug Task Force, knew that items similar to the propane cylinder, with its original valve removed, and the brass valve, were commonly used to steal and store anhydrous ammonia. Deputy Fowler also had knowledge of Appellant's involvement in methamphetamine activities from his prior encounter with Appellant. We also noted earlier that Appellant was in an area, either stopped or driving without his headlights, where there was no other traffic, nothing open at that time, and in close proximity to anhydrous ammonia storage tanks where anhydrous ammonia had often been stolen. Further contributing to the probable cause was Deputy Bolin's testimony that Appellant was very nervous, Appellant's behavior after he stopped his truck, his statements regarding "Mary," and, his offer to give Deputy Bolin the cylinder and valve.

This situation is distinguishable from *Crum*, 536 S.W.2d at 510, where the only evidence supporting probable cause was the officer's knowledge of the defendant's reputation for using marijuana "practically at all times" and bulges through his shirt pockets. All of the facts presented to the trial court, taken together, demonstrate that there was adequate probable cause to place Appellant under arrest for possession of paraphernalia with the intent to combine the paraphernalia and manufacture methamphetamine and to seize the propane cylinder and brass valve. The trial court did not err in overruling Appellant's motion relating to the physical evidence and in admitting it at trial. As to the denial of Appellant's motion regarding his statements, and their admission in evidence, we find no plain error. Appellant's third point is denied.

We affirm the conviction and sentence of the trial court.

BATES, C.J., and RAHMEYER, J., concur.