**STATE of Missouri, Respondent,**

v.

**Helen Van ANDERSON, Appellant.**

No. 27646.

Missouri Court of Appeals,
Southern District,
Division One.

April 3, 2007.

Petition for Rehearing or Reconsideration
and
Transfer Denied April 23, 2007.

Application for Transfer Denied
May 29, 2007.

Thomas D. Carver and Dee Wampler, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Jayne T. Woods, Jefferson City, for respondent.

Before RAHMEYER, P.J., PARRISH and SCOTT, JJ.

PER CURIAM.

Defendant was convicted of possessing the methamphetamine[1] precursor pseudoephedrine—specifically, six packages of Target cold and allergy pills—with intent to manufacture meth. The pills were never tested; the sealed packages never opened. Defendant thus claims there was insufficient proof the packages contained pseudoephedrine or that she possessed the substance. We view the record most favorably to the verdict. *State v. Lloyd,* 205 S.W.3d 893, 898 (Mo.App.2006).

Since pseudoephedrine is a key ingredient or "precursor" for meth-making, our laws limit the purchase and sale of over-the-counter medicines containing it.[2] After Defendant made a suspicious purchase, Target store security called the police, who stopped and ultimately arrested Defendant. She made several incriminating statements, later admitted at trial. She indicated she had used meth; she knew pseudoephedrine was used to make meth; and she knew Target limited how much pseudoephedrine one person could buy. She brought her 11–year–old child to the store, and they tried to buy three boxes each. Target refused to sell the child pseudoephedrine, but Defendant somehow managed to buy all six packages herself. Defendant told the police something to the effect "I guess you're going to take me to jail today." She said she planned to trade or sell the pseudoephedrine to someone in Jasper County who would use it to make meth. Defendant does not challenge the admission of this evidence.

Defense counsel objected at trial to the pill packages or evidence they contained pseudoephedrine based on their labeling,

> because there's no scientific—there's been no examination whatsoever whether or not they do contain pseudoephedrine. . . . [T]he lack of scientific tests or qualified testimony that these pills themselves contain pseudoephedrine. I mean, there's been no examination to say that they contain pseudoephedrine. The only reason that you can say that they contain pseudoephedrine is that it appears on the box, it says 60 milligrams of pseudoephedrine.
>
> . . . .
>
> I am objecting based on that because the boxes coming in contain statements concerning pseudoephedrine on the box and which is hearsay, because I can't cross-examine the box. There is no foundation being laid as to whether or not the pills, in fact, do contain pseudoephedrine which I think is an essential burden of the state to show that, since it is a key element in this, that they show it does contain pseudoephedrine and not just based on hearsay.

The objection was overruled and the unopened pill packages were admitted into evidence and shown to the jury. A police witness later read from a package label in his testimony, and the packages were sent to the jurors on request during deliberations.

---

1. Hereafter, and commonly known as, "meth."

2. See RSMo. §§ 195.417 (over-the-counter sales of methamphetamine precursor drugs), 195.418 (retail sales of methamphetamine precursor drugs).

Defendant was convicted, and sentenced to eighteen months in prison and a fine. Her appeal renews her challenge to admission of the pill packages, and to their labels as proving she possessed pseudoephedrine.[3]

A trial court has broad discretion to admit or exclude evidence at trial. We will not disturb its ruling unless the court clearly abused its discretion. Further, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Naasz*, 142 S.W.3d 869, 878 (Mo.App.2004). The record reflects Defendant told police she knew she was buying pseudoephedrine, and fully meant to do so, because she planned to pass it along to Jasper County meth-makers. Given this evidence, we cannot find that admitting the packages themselves was error or prejudicial. Defendant's Confrontation Clause argument, first raised in her reply brief, comes too late and is waived. *Security Bank v. Dooms*, 884 S.W.2d 710, 711 (Mo.App.1994). We affirm the judgment.

SCOTT, J., concurs in separate opinion.

DANIEL E. SCOTT, Judge, concurring.

I fully concur. I write only to dispel any notion that we should grant plain error review on the Confrontation Clause issue based on the recent *March* case,[1] or that our result would be different if we did. In *March*, our supreme court held a notarized laboratory test report, specifically created at law enforcement's request for prosecution purposes and offered in lieu of the analyst's live testimony, was a "core" testimonial statement subject to Confrontation Clause requirements.

These pill packages are significantly different from the report in *March*. Several courts have allowed similar packaging to be admitted in meth precursor prosecutions,[2] and one of those also considered a Confrontation Clause challenge. "It seems clear to us that the author of the label on the non-prescription, over-the-counter medication at issue here, was not a 'witness against the accused.' Thus, the statements on the labels, though hearsay, would nevertheless fall within *Crawford's*[3] discussion of non-testimonial hearsay." *Burchfield v. State*, 892 So.2d 191, 202 (Miss.2004). As such, the non-testimonial hearsay was exempt from Confrontation

---

**3.** Defendant's multifarious point relied on "makes the entire judgment one error and lists multiple grounds therefor, the result is that the point contains multiple legal issues. Separate issues should be stated in separate points relied on." *Helmig v. State*, 42 S.W.3d 658, 666–67 n. 1 (Mo.App.2001). Thus, Defendant arguably preserved nothing for appellate review. *State v. Daggett*, 170 S.W.3d 35, 42 (Mo.App.2005). But we would rather decide cases on their merits, and by considering Defendant's argument as well, we can determine she is claiming, at bottom, that the State failed to show she possessed pseudoephedrine because "there was no testimony that the pills in the boxes were examined to detect the presence of pseudoephedrine," and "the testimony of a chemist or such other person qualified by scientific training to identify con-

trolled substances" was needed to make a submissible case.

**1.** *State v. March*, No. SC87902, slip op., 216 S.W.3d 663, 666 (Mo. 2007).

**2.** *See, e.g., Reemer v. State*, 835 N.E.2d 1005 (Ind.2005); *Burchfield v. State*, 892 So.2d 191 (Miss.2004); *State v. Heuser*, 661 N.W.2d 157 (Iowa 2003); *Shaffer v. State*, 184 S.W.3d 353 (Tex.App.2006); *Brand v. State*, 941 So.2d 318 (Ala.Crim.App.2006); *People v. Shevock*, 335 Ill.App.3d 1031, 270 Ill.Dec. 390, 782 N.E.2d 949 (2003). These cases hold that contemporary food and drug regulation and pharmaceutical practice render medicine labels inherently accurate and trustworthy.

**3.** *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Clause challenge. *Id.* The same reasoning applies here.